IN THE UNITED STATED DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| KENNETH WAITHE and LINDA WAITHE, Individually and on behalf of All Others Similarly Situated, <br><br>    Plaintiff, <br><br>-vs- <br><br>ARROWHEAD CLINIC, INC., ARROWHEAD MANAGEMENT, INC., HARRY W. BROWN, INC., H. BROWN MANAGEMENT COMPANY, LLC., HARRY W. BROWN, JR., LEGAL COUNSEL, INC., ROBERT D. STEIN, and ROBERT. D. STEIN d/b/a ROBERT D. STEIN & ASSOCIATES, <br><br>    Defendants. | Civil Action No. 4:09-cv-00021 <br><br><br> COMPLAINT- CLASS ACTION |

## PLAINTIFFS' SECOND AMENDED COMPLAINT AS TO COUNT III - THE FRAUD COUNT

**COME NOW**, the Plaintiffs KENNETH WAITHE and LINDA WAITHE, Individually and on Behalf of Other Plaintiffs Similarly Situated, and pursuant to order of this Court, dated January 12, 2011, (Doc. 55), file this their Second Amended Complaint as to Count III - the First Amended and Recast Complaint, showing the Court as follows:

The factual allegations contained in paragraphs 1 through 35 of the Plaintiffs First Amended and Recast Complaint (Doc. 6), are incorporated herein by reference. In addition to those factual allegations, the Plaintiffs state the following:

1. On January 1, 2005, Plaintiffs Linda Waithe and Kenneth Waithe were involved in a motor vehicle collision.

2. As a result of receiving these injuries, both Linda Waithe and Kenneth Waithe sought treatment from the Arrowhead Clinic in Hinesville, Georgia. Upon information and belief, this clinic is owned and operated by Defendant Arrowhead Clinic, Incorporated.

3. Mrs. Waithe first received treatment at the Arrowhead Clinic on January 6, 2005. She continued treatment until March 31, 2005.

4. Mr. Waithe first received treatment at the Arrowhead Clinic on January 6, 2005. He continued treatment at this clinic until March 31, 2005.

5. While on the premises of the Arrowhead Clinic during their initial chiropractic visit, each Plaintiff was approached by an individual whom they were each lead to believe was a representative of Defendant Attorney Robert D. Stein and/or his law firm, Defendant Robert D. Stein and Associates, and/or Legal Counsel. .

6. During this initial chiropractic visit, both Plaintiffs were informed of the following by the representative of Defendant Stein and his law firm:

    a. that they had chosen an excellent and experienced doctor to help in their recovery;

    b. that each patient needed to continue all treatment prescribed by the physician;

    c. that if treatment was discontinued, or there was a gap in treatment, it would be difficult to convince the at-fault person's insurance carrier to pay for treatment after the gap in treatment;

    d. that during the course of treatment, the patient may be referred to a specialist such as an orthopedic surgeon or neurologist, and that this treatment from a specialist was not a substitute for treatment by a chiropractor, and that treatment with the chiropractor should continue while the patient was treating with a specialist.

7. During this initial visit, Kenneth Waithe was made to sign a "Doctor Referral Confirmation," indicating that he had "asked his doctor to recommend attorneys to handle [his] personal injury claim," and that "after having done so, [he] asked my Doctor to arrange an appointment and/or interview with Attorneys Robert D. Stein and Robert W. Mayhue, Jr., or an investigator from their office." Mr. Waithe did not request referral to an attorney, but was told to sign the documents if he desired treatment.

8. During this initial visit, Linda Waithe was made to sign a "Doctor Referral Confirmation," indicating that she had "asked his doctor to recommend attorneys to handle [her] personal injury claim," and that "after having done so, [she] asked my Doctor to arrange an appointment and/or interview with Attorneys Robert D. Stein and Robert W. Mayhue, Jr., or an investigator from their office." Mr. Waithe did not request referral to an attorney, but was told to sign the documents if she desired treatment.

9. During this initial visit, Kenneth Waithe was also made to sign an "Attorney Recommendation Form." This form states:

> This is to confirm that I have asked by Doctor to recommend Attorneys who handle personal injury cases. Among others, my doctor has recommended Attorney Robert D. Stein and Attorney Robert W. Mayhue, Jr.
>
> I have asked my Doctor to contact these attorneys to meet with me and I agree to speak with Morris Hill, their investigator. I understand that I am doing so without any obligation on my part or on the part of these Attorneys. I understand that Mr. Hill is an investigator, is not an Attorney, and will give no legal advice during the interview.

Mr. Waithe did not request referral to an attorney, but was told to sign the documents if he desired treatment.

10. Plaintiff Linda Waithe was asked to sign an identical "Attorney Recommendation Form" during her initial visit. Linda Waithe did not request referral to an attorney, but was told to sign the documents if she desired treatment.

11. Neither Linda Waithe nor Kenneth Waithe actually requested the Arrowhead Clinic physician to refer them to an attorney. Instead, each Plaintiff was informed by representatives of the Arrowhead Clinic that they were required to retain an attorney before they could obtain chiropractic treatment.

12. On January 6, 2005, Plaintiff Kenneth Waithe signed a retainer agreement with Defendant Robert D. Stein.

13. On information and belief, Plaintiff Linda Waithe signed a retainer agreement with Defendant Robert D. Stein on January 6, 2005.

14. On January 6, 2005, Plaintiff Linda Waithe signed an "Assignment of Benefits and Doctor's Lien," which directed any insurance company providing her with coverage to pay directly to Defendant Harry W. Brown, Inc. from the proceeds of any recovery made as a result of her injury. This assignment included payment for chiropractic fees and services, expert witness fees. This document further gives her doctor the power of attorney to endorse her name on any and all checks received from third parties. Finally, this document gives the physician a lien against any recovery obtained due to her injuries.

15. On January 6, 2005, Linda Waithe signed an "Agreement of Patient and Attorney Regarding Payment of Benefits and Doctor's Lien," which authorizes her attorney to pay directly to the chiropractic clinic proceeds of any settlement received. This document specifically states that it is given as consideration of the Doctor's agreement to await payment from the patient.

16.  Kenneth Waithe also signed an "Assignment of Benefits and Doctor's Lien" and an "Agreement of Patient and Attorney Regarding Payment of Benefits and Doctor's Lien," during his initial visit at the Arrowhead Clinic on January 6, 2005.

17.  Thus, by the end of their first visit at the chiropractor's office, and without speaking to an attorney, Plaintiffs had each retained an attorney, and given Defendant Harry W. Brown the ability to endorse checks made out to them.

18.  Neither Plaintiff was informed of the symbiotic business relationship between Defendants Harry W. Brown, Inc., Robert D. Stein, The Stein Law Firm, and the Arrowhead Clinic.

19.  The existence and extent of this relationship was a material fact which materially affected each Plaintiffs' decision to a) receive chiropractic treatment from the Arrowhead Clinic; and b) to retain Defendant Stein and the Stein Law Firm to represent them in their personal injury claim.

20.  Upon information and belief, Defendant Harry W. Brown, Inc. was charged with management and bookkeeping duties for Defendant Arrowhead Clinic, Inc.

21.  In the course of its duties as bookkeeper, Defendant Arrowhead Clinic, Inc. generated statements of patient accounts.  It was able to produce two different types of statements: a) a "clean statement," which reflected only patient charges, and b) a full statement, which reflected both patient charges and credits for payments received from third party payors, such as medical and liability insurers.

22.  Upon information and belief, Defendant Stein and The Stein Law Firm, attempted to resolve both Mr. Waithe and Mrs. Waithe's claims against the driver responsible for their injuries.

23.  Upon information and belief, perhaps for purposes of settlement, Harry W. Brown, Inc. provided a "clean bill" to Defendants Stein and/or the Stein Law Firm, which reflected the total amount of chiropractic expenses incurred.  This "clean bill" did not reflect any credits.

24. In contrast, the full bill maintained in the offices of Harry W. Brown, Inc., did reflect credits to the patient account.

25. The "clean bill" for the chiropractic treatment received by Plaintiff Kenneth Waithe indicated total charges in the amount of $ 3935.00. The "full bill" maintained by Harry W. Brown, Inc., indicated that the balance of the patient account was $100.00, as of May 3, 2005.

26. The "clean bill" for the chiropractic treatment received by Plaintiff Linda Waithe reflected total charges in the amount of $3940.00, as of March 31, 2005. The "full bill" reflected a total balance of $580.38 as of May 3, 2005.

27. On or around May 25, 2005, Plaintiff Linda Waithe and Kenneth Waithe settled their claims against the tortfeasors. Each Plaintiff received a total sum of $7,750, with Robert D. Stein and the Stein Law Firm receiving a 40% contingency fee of $3,100. 00. The only expenses incurred by Stein and his law firm were those owed to Harry W. Brown, Inc. and/or Defendant Arrowhead Clinic, Incorporated, of $250.00. Each Plaintiff received $4,400.00.

28. The balance existing in each of the Plaintiff patient accounts was not disclosed to them by either Arrowhead Clinic, Incorporated or Harry W. Brown, Inc.

29. The balances in the patient accounts were improperly kept from the Plaintiffs for over two years. In November of 2007, both Plaintiffs received a refund of $100.00 from Harry W. Brown, Inc. In December of 2007, a check in the amount of $480.38 was issued to an unknown insurance company for expenses incurred in treatment of Plaintiff Linda Waithe.

30. It is believed that payment of these refunds was prompted by claims raised in related lawsuits, formerly pending in the Georgia state court system. In these civil actions, the Affidavit of Shelah Gibbs, outlining the "clean bill" and "full bill" claims, was presented. (Ms. Gibbs' affidavit

was previously placed in the record in this action as Exhibit A to Plaintiffs' First Amended Complaint, Doc. 6).

COUNT THREE (Amended) -
Fraud/Constructive Fraud as to All Defendants
Failure to Disclose Relationship between Defendants

31. On information and belief, a business relationship existed between Defendants Arrowhead Clinics, Incorporated, Harry W. Brown, Inc., Stein, the Stein Firm, and or Legal Counsel.

32. The existence of this business relationship created a financial interest on the part of the Stein, the Stein Firm, Legal Counsel, and Defendants Arrowhead Clinics, Incorporated and Harry W. Brown, Inc.

33. The existence of this business relationship adversely impacted the ability of the attorney defendants to represent their clients by creating an inherent conflict of interest between the attorney's financial interest and the best interest of the client.

34. The Plaintiffs, as clients of the attorneys, were entitled to know of this financial interest. Such a disclosure was necessary, and impacted the ability of each of the Plaintiffs to knowingly enter an attorney client relationship.

35. The Plaintiffs, as patients of the Arrowhead Clinics and Harry W. Brown, Inc., were entitled to know of this financial interest. Such a disclosure was necessary, and impacted the ability of each of the Plaintiffs to knowingly enter an physician patient relationship.

36. The existence of this relationship was not disclosed to either Plaintiff during his or her initial meeting the representatives of the law firm on January 6, 2005 on the premises of the Arrowhead Clinic.

37. Defendant Arrowhead Clinic, Incorporated, participated in this fraudulent scheme by allowing individuals representing the Stein, the Stein Law Firm, and/or Legal Counsel to use its premises for the initial client contacts; and by requiring its employees to steer patients to meet with the legal representatives prior to receiving chiropractic treatment.

38. Defendant Harry W. Brown, Inc., participated in this fraud through its creation of certain forms, which gave it a direct interest in the legal recovery to be obtained by the Plaintiffs, and a priority position in claiming entitlement to any funds secured for the patient/client through the efforts of Stein, the Stein Law Firm, and Legal Counsel, and through failing to accurately report the status of patient accounts.

39. Defendants Stein, the Stein Law Firm, and Legal Counsel participated in the fraudulent scheme through its creation of forms, which protected the ability of the Harry W. Brown, Inc. and the Arrowhead Clinic, Incorporated, to be compensated for its service to the detriment of the clients, and by providing non-attorneys to meet with clients on the premises of the chiropractic treatment, and to obtain signatures.

40. This business relationship constituted a fee-sharing arrangement which is contrary to public policy of the State of Georgia.

41. This business relationship was not disclosed to the patients/client, thereby inducing them to enter the attorney-client contract without a full disclosure of the pertinent facts.

42. This business relationship was not disclosed to the patient/client, thereby inducing them to treat with the Chiropractic Defendants without knowledge of their interest in the arrangement.

43. Plaintiff has sustained damage from this fraudulent scheme, including but not limited to incurring liability for attorneys fees and expenses, and for chiropractic treatment.

44. Upon information and belief, this fraudulent scheme was designed and or created by Harry W. Brown, Jr., through his role in Harry W. Brown, Inc. and Arrowhead Clinincs, Incorporated.

45. Each Plaintiff is entitled to damages flowing from the failure of the Defendants to disclose the existence of their intertwined business relationship.  These damages include, but are not limited to, disgorgement of legal fees and chiropractic improperly earned as a result of the Plaintiffs being fraudulently induced to enter the business relationship with these Defendants.

### IV.  CLAIMS FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

(a) that process issue and Defendants be served as provided by law;

(b) that the Plaintiff be allowed to pursue this case in her individual capacity, and on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, or other applicable rule of procedure;

(c) that Plaintiffs recover of the Defendants damages for their injuries;

(d) that Plaintiffs recover of the Defendants damages flowing from their fraudulent conduct, including but not limited to, disgorgement of any attorneys fees and/or payments on medical liens obtained by the Defendants pursuant to their scheme;

(e) that Plaintiffs recover of the Defendants punitive damages to deter Defendants from committing similar actions in the future;

(f) that Plaintiffs recover attorney fees for the bringing and maintenance of this action; and for causing Plaintiffs unnecessary trouble and expense, and acting in bad faith;

(g) that Plaintiffs have a trial by jury on all issues raised in this complaint; and

(h) that Plaintiffs have any and all other relief the Court may deem just and proper under the circumstances.

**THIS THE  24th   DAY OF  JANUARY , 2011**.

                                             SAVAGE & TURNER, PC

                              BY:   /s/ Brent J. Savage
                                        Brent J. Savage
                                        Georgia Bar No. 627450

304 East Bay Street
Post Office Box 10600
Savannah, Georgia  31412
(912) 231-1140
bsavage@savagelawfirm.net

LLOYD D. MURRAY & ASSOCIATES
Lloyd D. Murray
Georgia Bar No. 531955
10164 Ford Ave., Suite A
Post Office Box 1569
Richmond Hill, Georgia 31324

IN THE UNITED STATED DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| KENNETH WAITHE and LINDA WAITHE, Individually and on behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>-vs-<br><br>ARROWHEAD CLINIC, INC., ARROWHEAD MANAGEMENT, INC., HARRY W. BROWN, INC., H. BROWN MANAGEMENT COMPANY, LLC., HARRY W. BROWN, JR., LEGAL COUNSEL, INC., ROBERT D. STEIN, and ROBERT. D. STEIN d/b/a ROBERT D. STEIN & ASSOCIATES,<br><br>    Defendants. | Civil Action No. 4:09-cv-00021<br><br><br><br>COMPLAINT- CLASS ACTION |

**CERTIFICATE OF SERVICE**

    This is to certify that I have on this day served all the parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing. All parties identified below have also been served via United States Mail, postage prepaid:

Tracy M. Elliott, Esq.
James C. Grant, Esq.
Alston & Bird, LLP
One Atlantic Center
1201 W. Peachtree St.
Atlanta, GA 30309-3424
404-881-7000
404-881-7777 (fax)

John Colquitt Rogers, Esq.
Carlock, Copeland, Semler & Stair, LLC
P.O. Box 56887
Atlanta, GA 30343-0887
404-522-8220
404-222-9482 (fax)
jrogers@carlockcopeland.com

Johannes S. Kingma, Esq.
Carlock, Copeland, Semler & Stair, LLC
P.O. Box 56887
Atlanta, GA 30343-0887
404-221-2278
404-222-9482 (fax)
jkingma@carlockcopeland.com

Mason White, Esq.
Brennan, Harris & Rominger, LLP
P.O. Box 2784
Savannah, GA 31402-2784
912-233-3399
912-236-4558 (fax)
gmw@bhrlegal.com

Lloyd Dan Murray, Esq.
Murray & Harvey, LLC
10164 Ford Avenue
Suite A
Richmond Hill, GA 31324
912-756-4775
912-756-6310 (fax)

      **THIS THE  24th   DAY OF  JANUARY , 2011**.

              SAVAGE & TURNER, PC

              BY:   /s/ Brent J. Savage
                      Brent J. Savage
                      Georgia Bar No. 627450

304 East Bay Street
Post Office Box 10600
Savannah, Georgia  31412
(912) 231-1140
bsavage@savagelawfirm.net