# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| KENNETH WAITHE and LINDA WAITHE, Individually and on behalf of All Others Similarly Situated | * * * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | |
| | * | CV 409-021 |
| ARROWHEAD CLINIC, INC., | * | |
| ARROWHEAD MANAGEMENT, INC., | * | |
| HARRY W. BROWN, INC., H. BROWN | * | |
| MANAGEMENT COMPANY, LLC, | * | |
| HARRY W. BROWN, JR., LEGAL | * | |
| COUNSEL, INC., ROBERT D. STEIN | * | |
| d/b/a/ ROBERT D. STEIN & ASSOCIATES | * | |
| | * | |
| Defendants. | * | |

## ORDER

Presently before the Court is a Motion for Summary Judgment filed by Defendants Arrowhead Clinic, Inc. ("ACI"), Arrowhead Management Inc. ("AMI"), Harry W. Brown, Inc. ("HWBI"), and H. Brown Management Company, LLC ("Brown Management") (collectively referred to as "Brown-Arrowhead"). Brown-Arrowhead's Mot. Summ. J., Dkt. No. 101. Also before the Court is a Motion for Summary Judgment filed by Defendants Robert D. Stein d/b/a/ The Law Offices of Robert D. Stein and Legal Counsel, Inc. (collectively

referred to as "Stein").   Stein's Mot. Summ. J., Dkt. No. 103.
Linda and Kenneth Waithe ("Plaintiffs") have also moved for
summary judgment.   Pls.' Mot. Summ. J., Dkt. No. 104.   For the
reasons stated below, the Court orders Plaintiffs' Motion
**DENIED**, Brown-Arrowhead's Motion **GRANTED**, and Stein's Motion
**GRANTED**.


**BACKGROUND**

     Plaintiffs were involved in a car accident on January 1,
2005.   Pls.' Am. Compl., Dkt. No. 6.   Soon after the accident,
Plaintiffs sought chiropractic treatment at the Arrowhead Clinic
in Hinesville, Georgia.   L. Waithe Dep. 33:20, Dkt. No. 101, Ex.
C.   During the initial visit, Plaintiffs met with a
representative from Stein, who initiated a legal representation
contract.   Id. at 78:16.   The circumstances of how the
Plaintiffs and the Stein representative met are in dispute.
Plaintiffs assert that upon arrival at the clinic they filled
out several basic medical information forms.   Id. at 35:4.
Plaintiffs then participated in an initial consultation in an
examination room with someone they were told was a doctor.   Id.
at 35:19.   The doctor discussed spinal injuries and showed
Plaintiffs a few exemplar spinal x-rays.   Id.   According to the
Plaintiffs, the doctor told them that in order to receive
treatment from the clinic Plaintiffs would need a lawyer.   Id.

at 35:23. Plaintiffs claim they questioned this requirement, but the doctor confirmed that it was necessary that the Plaintiffs have legal counsel in order to receive treatment. Id. The doctor then said, "It just so happens I have someone here from the Stein firm." Id. at 36:3. Plaintiffs claim that the Stein representative was referred to as an "investigator." Id. at 79:3. According to Plaintiffs, the investigator had the Plaintiffs fill out a number of forms connected with the Stein firm including a contract for legal representation. Id. at 50:4. Among the documents signed by the Plaintiffs was an "Attorney Recommendation" form, indicating that they asked their doctor to recommend a lawyer. Attorney Recommendation Form 2, Dkt. 101, Ex. G. Plaintiffs state that they did not actually ask Brown-Arrowhead to recommend counsel, as the form indicates, but signed the form because they thought that they would not receive treatment unless they agreed to meet with Stein. L. Waithe Dep. 126:22, Dkt. No. 101, Ex. C.

Plaintiffs' sole payment to Brown-Arrowhead was a $100 payment for each Plaintiff made during that first visit to the clinic. Id. at 69:23. Although Plaintiffs visited the clinic several more times for treatment, they were never asked to make any additional payments. Plaintiffs' bills indicate that their insurance companies made various payments to the clinic. Brown-Arrowhead's Mot. Summ. J., Dkt. No. 101, Ex. J. Plaintiffs had

3

little contact with Stein during this time, other than phone calls during settlement negotiations.  Ultimately, the Plaintiffs received approximately $7,750 each in settlement of their claims against the other driver, of which approximately forty percent went to Stein for fees.  L. Waithe Dep. 96:1, Dkt. No. 101, Ex. C.

Several months after the culmination of Brown-Arrowhead's chiropractic treatment and Stein's legal representation of the Plaintiffs', Plaintiffs' current counsel contacted Brown-Arrowhead about the likelihood of the present lawsuit.  Soon after that contact, Brown-Arrowhead sent Plaintiffs a $200 check, apparently as a refund for any payments (or overpayments) made by the Plaintiffs.  Plaintiffs cashed the check without question.  Id. at 70:13.  This lawsuit followed.

Plaintiffs testified that they felt that Stein misled them into believing that Stein would try to get the best possible settlement for the Plaintiffs.  Id. at 134:11.  Linda Waithe felt that the Stein firm harmed them by "not providing [Plaintiffs] with the best possible representation."  Id. at 136:23.  Kenneth Waithe believed he was harmed by the fact that Stein misrepresented its interactions with Brown-Arrowhead (including the exchange of information between the parties), by not being generally truthful in their dealings, and because

Stein did not "really [go] all out for [Plaintiff]." K. Waithe Dep. 61:24, 64:6, Dkt. No. 103, Ex. 6.

Plaintiffs filed suit against Brown-Arrowhead and Stein based on a number of different theories of liability.[1] Plaintiff's initial Complaint consisted of eight separate counts. Compl., Dkt. No. 1. Count One asserted a claim of professional negligence against Stein, and Count Two asserted a claim of professional negligence against Brown-Arrowhead. The remaining six counts were asserted against both sets of Defendants. Count Three alleged fraud and constructive fraud arising from Defendants' failure to disclose to Plaintiffs the relationship between the Defendants. Count Four alleged fraud and constructive fraud for the failure to properly credit Plaintiffs' patient accounts. Count Five alleged ordinary negligence by Stein based on its duty to insure adequate representation and not to "solicit, harass and invade the privacy of potential clients," and negligence by Brown-Arrowhead based on its duty to "protect and respect [patient's] privacy, and to adequately maintain their patient accounts." Count Six claimed that Defendants breached their fiduciary duties to

---

[1] Plaintiffs ultimately seek to proceed as a class action with two distinct classes of Plaintiffs. Pls.' Am. Compl., Dkt. No. 6. Currently, discovery has only been allowed regarding the individual named Plaintiffs; discovery related to class certification is contingent on finding that the named individual Plaintiffs have viable claims. Dkt. No. 80.

AO 72A
(Rev. 8/82)

Plaintiffs.   Counts Seven and Eight claimed a right to attorney's fees and punitive damages, respectively.[2]

Brown-Arrowhead moved to dismiss Plaintiffs' Complaint on various grounds.  Brown-Arrowhead's Mot. Dismiss, Dkt. No. 7. The Court granted Brown-Arrowhead's motion with regards to Counts Two (Professional Negligence), Four (Fraud/Constructive Fraud), and Six (Breach of Fiduciary Duty).  Dkt. No. 55. Although the Court stated that Count Three (Fraud/Constructive Fraud) failed to state a claim as pled, the Court granted Plaintiffs additional time to amend their Complaint in order to cure the defects.  Id.  The Court denied Brown-Arrowhead's motion regarding Count Five (Negligence), Seven (Attorneys' Fees), and Eight (Punitive Damages).  Id.

Plaintiffs took advantage of the extra time afforded to amend Count Three, and filed "Plaintiffs' Second Amended Complaint as to Count Three - the Fraud Count."  Pls.' Second Am. Compl., Dkt. No. 59.  Brown-Arrowhead, moved to dismiss the amended Count Three and argued that all other counts had been abandoned by the Plaintiffs because they failed to include them in the amended complaint.  Brown-Arrowhead's Second Mot. Dismiss, Dkt. No. 63.  Stein moved to dismiss the amended Count

---

[2] The original Complaint filed in the State Court of Liberty County, Georgia is nearly identical to the Plaintiff's "First Amended and Recast Complaint" filed in this Court, with one small difference.  See Dkt. Nos. 1, 6.  The first amended complaint purposefully drops Harry W. Brown Sr. as a defendant in the suit.

Three and Count Four as it pertained to Stein.  Stein's Mot.
Dismiss, Dkt. No. 65.  The Court held that the amended Count
Three remained impermissibly vague, and dismissed the claim with
regards to both sets of Defendants.  Dkt. No. 122.  The Court
rejected Brown-Arrowhead's argument that Plaintiffs abandoned
the other claims.  Id.  Finally, the Court explicitly dismissed
Count Four as it related to Stein, relying on the same reasoning
for dismissing Count Four with regards to Brown-Arrowhead in its
earlier order.  Id.

As the case stands now, one claim against Brown-Arrowhead
and three claims against Stein remain unresolved.  The sole
remaining claim against Brown-Arrowhead is Count Five which
claims that Brown-Arrowhead was negligent in failing to protect
the Plaintiffs' privacy and in failing to adequately maintain
the Plaintiffs' patient accounts.  The three remaining claims
against Stein are as follows: Count One asserts that Stein
committed professional negligence by requiring Plaintiffs to
sign a contract for representation that authorized Stein to pay
all of the client's medical expenses, and by wrongfully
soliciting clients in the physical confines of a medical
provider; Count Five asserts that Stein was negligent in
soliciting, harassing, and failing to adequately represent the
Plaintiffs, as well as invading Plaintiffs' privacy; and Count
Six alleges that Stein breached its fiduciary duty to adequately

AO 72A
(Rev. 8/82)

protect the interests of its clients by "receiving private information concerning a potential client, without authorization, and using it to their economic advantage."[3]  Both sets of Defendants have filed motions for summary judgment.[4] Brown-Arrowhead's Mot. Summ. J., Dkt. No. 101, Stein's Mot. Summ. J., Dkt. No. 103.  Plaintiffs also seek summary judgment on their claims.  Pls.' Mot. Summ. J., Dkt. No. 104.  The Court now considers the parties' summary judgment motions.

**LEGAL STANDARD**

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Collins v. Homestead Correctional Inst., 2011 WL 4584817, at *2 (11th Cir. Oct. 5, 2011) (quoting Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990)).  The court must view the evidence and draw all inferences in the light most favorable to the nonmovant.

---

[3] Plaintiffs' requests for attorney's fees in Count Seven and punitive damages in Count Eight have not been dismissed, but do not set forth separate causes of action.  Rather, these are claims for damages, which are contingent on the success of the remaining substantive claims.  See Nash v. Studdard, 670 S.E.2d 508, 515 (Ga. Ct. App. 2008) (punitive damages); Duffy v. The Landings Ass'n, Inc., 563 S.E.2d 174 (Ga. Ct. App. 2002) (attorney's fees).

[4] The Defendants filed their motions prior to the Court's order dismissing a number of Plaintiffs' claims.  As such, much of Defendants' briefing addresses claims that are no longer before the Court, and consequently the Court disregards those portions as moot.

Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.  The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs seek summary judgment on their claims against Brown-Arrowhead.  Pls.' Mot. Summ. J., Dkt. No. 104.  Indeed, Plaintiffs are so confident that liability has been established, they find it "incredible" that they need to move for summary judgment on their claims.  Id. at 1.  Brown-Arrowhead disagrees. Dkt. No. 111.  Plaintiffs' motion focuses on two claims: a common law claim for conversion and a claim of insurance fraud pursuant to O.C.G.A. § 33-1-9.  Neither of these claims was pled in any version of Plaintiffs' Complaint, and the Court is unaware of either party ever mentioning these theories prior to Plaintiffs' motion.

Brown-Arrowhead's response is twofold: (1) Plaintiffs should not be permitted to assert these claims because they have not followed the proper procedures for asserting new claims, and (2) if permitted to proceed on these theories, Plaintiffs' claims fail as a matter of law.  The Court finds Brown-Arrowhead's first argument sufficiently persuasive that it is unnecessary to consider the merits of Plaintiffs' summary judgment arguments.

"At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a).  A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam)); see also Joseph M. Still Burn Ctrs., Inc. v. Liberty Mut. Ins. Co., 2010 WL 55471 (S.D. Ga. 2010) (refusing to consider a claim improperly raised in a response to a motion for summary judgment).  Here, Plaintiffs go one step further: instead of raising new claims in a response to a motion for summary judgment, Plaintiffs assert entirely new claims in their own motion.  The Court will not consider claims that are entirely novel, and raised for the first time on summary judgment.  Accordingly, Plaintiffs' motion for summary judgment is denied.

**DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

As noted earlier, one claim against Brown-Arrowhead and three claims against Stein remain unresolved.  Plaintiffs' Count Five (Negligence) against Brown-Arrowhead remains pending; Plaintiffs' Counts One (Professional Negligence), Five (Negligence), and Six (Breach of Fiduciary Duty) remain pending against Stein.  The Defendants move for summary judgment on all remaining claims.

## I. Brown-Arrowhead's Motion for Summary Judgment

Only one claim against Brown-Arrowhead remains pending: Plaintiffs' Count Five (Negligence).  In Georgia, "[i]n order to have a viable negligence action, a plaintiff must satisfy the elements of the tort, namely, the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty."  Rasnick v. Krishna Hospitality, Inc., 713 S.E.2d 835, 837 (Ga. 2011) (citing John Crane, Inc. v. Jones, 604 S.E.2d 822 (Ga. 2004)).

Plaintiffs' Count Five asserts that Brown-Arrowhead had a duty to protect patients' privacy and "to adequately maintain their patient accounts . . . ."  Pls.' Am. Compl. ¶ 57, Dkt. No. 6.  Plaintiffs' claim that Brown-Arrowhead breached its duty by entering into a business relationship with Stein that was

AO 72A
(Rev. 8/82)

intended to put Brown-Arrowhead's interests ahead of its patients.  Id. ¶ 58.

## A. Disclosure of Patient Information

In part, Plaintiffs' negligence claim is based on the notion that Brown-Arrowhead disclosed confidential patient information to Stein.  Pls.' Am. Compl. ¶ 57, Dkt. No. 6.  In their motion for summary judgment, Brown-Arrowhead argues that there "is simply no evidence in the record that Plaintiffs' confidential medical information was released without their consent."  Brown-Arrowhead's Mot. Summ. J. 15-16, Dkt. No. 101.  Brown-Arrowhead argues that the Plaintiffs signed a form upon their initial visit to Brown-Arrowhead's Hinesville, Georgia clinic that clearly authorized the clinic to release medical information to Stein.  Id. (referring to Agreement of Patient and Attorney Regarding Payment of Benefits and Doctor's Lien, Dkt. No. 101, Ex. H).  Indeed the first sentence of the agreement states:

> I (Linda D. Waithe) authorize Harry W. Brown, Inc.
> through its employees, agents, and representatives (my
> "Doctor"), to furnish my attorney, (Rob Mayhue/Stein),
> Esquire, and/or (Go American) Insurance Company, and
> any other insurance company providing coverage to me
> and/or my family or the designee of any of them
> either, any medical information requested concerning
> the condition or treatment of injuries sustained by
> me, my spouse, and/or my children, on (1-1-05).[5]

---

[5] A nearly identical form pertaining to Kenneth Waithe is contained in the same exhibit.  The portions of the form in parentheses were filled in by hand; the remaining portions were printed.  Both forms indicate that they were signed by Plaintiffs on January 6, 2005.

Plaintiffs, motivated perhaps by the decisiveness of the above-quoted agreement, focus on alleged disclosures of private information that occurred *before* the signing of the release authorization. Pls.' Resp. 21, Dkt. No. 113. Specifically, Plaintiffs argue that before they signed the release authorization, the clinic provided Stein with Plaintiffs' patient intake forms, presumably in order to alert Stein about a potential client. Id. Plaintiffs base their claim on Shelah Gibbs's statements:

> Once the attorney was selected, the call center staff would fax a new patient intake form to the attorney's office. The sheet would have, in addition to other information, the patient's name, the date of the accident, address, insurance information, the clinic the patient would be going to, the date and time of the scheduled appointment, and the manner in which the patient heard about the Arrowhead Clinics.

Gibbs Aff. ¶ 5, Dkt. No. 113, Ex. 9. Brown-Arrowhead does not dispute whether it ever sent patient intake forms to Stein, but instead claims that Plaintiffs have presented no evidence that these specific Plaintiffs' intake forms were sent to Stein. Brown-Arrowhead's Reply 13-14, Dkt. No. 119.

Brown-Arrowhead argues that Gibbs' affidavit is generalized knowledge, and that she does not have any personal knowledge about the Plaintiffs' intake forms. Id. Brown-Arrowhead emphasizes that Gibbs, during her deposition, repeatedly

AO 72A
(Rev. 8/82)

testified that she had no personal knowledge of the Waithes.
For example, in response to a question about how the Waithes
became clients of Stein, Gibbs stated "I don't know [the
Plaintiffs] personally and I can't say that I know how they
became patients of Stein." Gibbs Dep. 102:17, Dkt. No. 95, Ex.
A. And, in response to the question "[Y]ou don't know one way
or the other whether the Stein firm was contacted prior to the
Waithes' arrival at the clinic?" Gibbs replied "I don't know
that, specifically, no." Id. at 126:10; see also id. at 118:16,
234:5, 281:23.

"At the summary judgment stage, general factual allegations
of injury will not suffice; rather, the plaintiff 'must set
forth by affidavit or other evidence specific facts, which for
purposes of the summary judgment motion will be taken to be
true.'" Barbour v. Haley, 471 F.3d 1222, 1225 (11th Cir. 2006)
(quoting Lewis v. Casey, 518 U.S. 343, 358 (1996)).
Importantly, "a court is not required to accept as true
testimony that is not based on personal knowledge" and a court
may disregard testimony not based on personal knowledge. Corwin
v. Walt Disney Co., 475 F.3d 1239, 1250 (11th Cir. 2007).
Furthermore, "inadmissible hearsay cannot be considered on a
motion for summary judgment." Macuba v. Deboer, 193 F.3d 1316,
1321 (11th Cir. 1999) (internal citations omitted).

AO 72A
(Rev. 8/82)

Here, the only support for Plaintiffs' claim that their private medical information was released is Gibbs' generalized factual assertion that the Brown-Arrowhead "call center staff would fax a new patient intake form to the attorney's office." Gibbs Aff. ¶ 5, Dkt. No. 113, Ex. 9. During her deposition Gibbs indicated repeatedly that her knowledge of this process was second-hand, based primarily on conversations she had with the call center staff members. See, e.g., Gibbs Dep. 99:17, Dkt. No. 95, Ex. A. Moreover, Gibbs explicitly testified that she did not know of how Stein came to be aware of Plaintiffs' need for an attorney. See id. at 102:17, 118:16, 126:10, 234:5, 253:14, 281:23. Gibbs clearly has no personal knowledge as to how Plaintiffs came to be Stein's clients. Without some factual evidence that Plaintiffs' private information was released, Plaintiffs' claims for negligent release of private medical information must fail.[6] Accordingly, Brown-Arrowhead is entitled to summary judgment on this claim.

## B. Failure to Adequately Maintain Patient Accounts

Plaintiffs' second theory of negligence is based on the notion that Brown-Arrowhead breached its duty to accurately maintain patient accounts. Pls.' Am. Compl. ¶ 57, Dkt. No. 6.

---

[6] The Court notes that even if the Waithes had demonstrated that their medical intake forms had been released, it is unlikely that the Waithes suffered any harm, given that they authorized the Stein firm to access their medical records immediately after the alleged disclosure. In effect, Plaintiffs are complaining about a disclosure of private medical information that occurred on Monday and was authorized on Tuesday.

AO 72A
(Rev. 8/82)

Plaintiffs' theory is not perfectly clear, but appears to be that Brown-Arrowhead negligently failed to identify money that was to be refunded to the Plaintiffs, which caused the funds to remain in the hands of Brown-Arrowhead for approximately twenty-nine months.  Plaintiffs claim that they suffered damage in the amount of interest that would have accrued on the funds if the money had been refunded at an earlier date.

Plaintiffs' theory focuses on $100 per patient, paid by the Waithes to the Brown-Arrowhead clinic on the day of the initial consultation.[7]  This $100 was the only money paid by the Waithes to Brown-Arrowhead.  It was not clear to either party that the amount constituted an overpayment until the treatment was completed and all insurance proceeds were credited to the Waithes' accounts.  Indeed, Plaintiffs were not even aware that they were entitled to a refund, nor did they ask Brown-Arrowhead to refund any overpayments.  L. Waithe Dep. 69:24, Dkt. No. 101, Ex. C.  Rather, Plaintiffs' attorney contacted Brown-Arrowhead prior to filing suit, and Brown-Arrowhead voluntarily refunded the amounts to the Waithes.  Harry W. Brown, Sr. Dep. 36-37, 56-

---

[7] Plaintiffs also point to $481 per patient that may have been owed to Plaintiffs' insurers, and argue that Brown-Arrowhead wrongfully retained these insurance funds for a similar length of time.  Plaintiffs in this case are Kenneth and Linda Waithe; no insurance companies are participating in the suit.  Plaintiff seeks to certify this action as a class action, hoping eventually to include some insurers and third-party payors in the class.  See Pls.' Am. Compl. ¶ 33, Dkt. No. 6.  Presently, however, the Court is only faced with claims by the Waithes and therefore limits its consideration to the payments made by those individuals.

AO 72A
(Rev. 8/82)

57, Dkt. No. 113, Ex. 6.  The Waithes were unsure why they received the check from Brown-Arrowhead, but nevertheless deposited the amount without question.  L. Waithe Dep. 72:12, Dkt. No. 101, Ex. C.

Brown-Arrowhead seeks summary judgment, contending that there is a complete lack of evidence to support the Plaintiffs' claims.  Brown-Arrowhead's Mot. Summ. J. 16, Dkt. No. 101. Brown-Arrowhead asserts that the evidence shows that the Plaintiffs' patient accounts were properly maintained, and that the $100 overpayments were properly refunded to the Plaintiffs. Id.  Alternatively, Brown-Arrowhead argues that any claim for interest on the refunded amounts is an action for economic loss arising from a contract between the Plaintiffs and Brown-Arrowhead, and consequently, recovery in tort is barred.[8] Plaintiffs' response consists primarily of arguing that Brown-Arrowhead had a duty to "abide by the Georgia Chiropractic Association's Code of Ethics," and that Brown-Arrowhead breached that duty when it "illegally used [Plaintiffs'] money for over

---

[8] Brown-Arrowhead has additional arguments.  First, Brown-Arrowhead contends that Plaintiffs have failed to adequately plead an action for negligence. Brown-Arrowhead argues that Plaintiffs have, at best, alleged that Brown-Arrowhead had a duty, but have not pled that Brown-Arrowhead breached this duty, or that any breach caused the Plaintiffs harm.  Brown-Arrowhead's Mot. Summ. J. n.11, Dkt. No. 101.  Second, Brown-Arrowhead argues that even if Plaintiffs had adequately pled an action for negligence, the claim could only be asserted against HWBI (the entity that collected the funds), not against AMI, ACI, Brown Management, or Brown (other related entities), given that the other entities had no access or control over the refunded amounts. Id. at 17.  The Court finds Brown-Arrowhead's other arguments sufficiently persuasive that it need not address Brown-Arrowhead's argument regarding pleading and proper parties.

two years without paying back any interest." Dkt. No. 113, at 20.

Brown-Arrowhead's first argument - that there is a lack of evidence to support Plaintiffs' claims - is well-taken. The course of events, viewed in the light most favorable to the Plaintiffs, indicates that Brown-Arrowhead voluntarily sent a refund to Plaintiffs with very little prompting. The initial payments by the Plaintiffs to Brown-Arrowhead were lawful, voluntary payments for services rendered. After these initial payments, Plaintiffs' insurers made various payments on the accounts. Once the treatment was complete, and the clinic received all payments from the insurers, each Plaintiff was left with a credit balance. After Plaintiffs' counsel contacted Brown-Arrowhead, approximately two and half years later, Brown-Arrowhead sent Plaintiffs a check for $200, consistent with the total amount of overpayments made by the Plaintiffs. L. Waithe Dep. 71:22, Dkt. No. 101, Ex. C. Based on these facts, there is no evidence to support a claim that Brown-Arrowhead failed to identify and refund overpayments to the Plaintiffs.

However, reading the Plaintiffs' pleadings with generous liberality, Plaintiffs seem to argue that Brown-Arrowhead had a duty to identify and refund the overpayments sooner, and breached that duty by failing to include interest in the refund amount. As such, the Court will consider Brown-Arrowhead's

alternative argument that Plaintiffs' claims, if any, arise solely from the contract between Plaintiffs and Brown-Arrowhead, and thus, Plaintiffs are unable to recover in tort.

Brown-Arrowhead couches its argument in terms of "Georgia's economic loss rule." Brown-Arrowhead's Mot. Summ. J. 17, Dkt. No. 101. Georgia's economic loss rule "generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort. Under the economic loss rule, a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property . . . ." Gen. Elec. Co. v. Lowe's Home Ctrs., Inc., 608 S.E.2d 636, 637 (Ga. 2005). "However, where 'an independent duty exists under the law, the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.'" Liberty Mut. Fire. Ins. Co. v. Cagle's, Inc., 2010 WL 5288673, at *3 (N.D. Ga. Dec. 16, 2010). Although the economic loss rule is most frequently applied in the context of products liability claims, the Georgia courts have applied the doctrine in a number of other contexts. See, e.g., City of Atlanta v. Benator, 714 S.E.2d 109, 116 (Ga. Ct. App. 2011) (applying the economic loss rule in context of a negligent construction suit).

Here, it is beyond question that Plaintiffs' claims for interest on overpayments are claims for "purely economic"

losses.   There is also no dispute that that the Plaintiffs and

Brown-Arrowhead were in a contractual relationship.   The more

difficult issue is whether Plaintiffs have asserted a cause of

action based on a duty of care that exists independent from the

contract between the parties.   Specifically, in order for

Plaintiffs' claim to be viable, Georgia law would need to impose

a duty to pay interest on overpayments to a medical care

provider, independent of any contractual duty to do so.

   Although the Court is not aware of any case that perfectly

addresses this issue, Georgia cases indicate that there is no

such duty.   Georgia courts have stated:

> [i]t is very generally stated that interest, being of
> purely statutory origin and not the creature of the
> common law, should not be awarded except in such cases
> as fall within the terms of the statute, unless it has
> been contracted for either expressly or impliedly.   In
> other words, there is no absolute right, independent
> of contract, express or implied, or of statute, to
> interest.

City of Atlanta v. Lunsford, 124 S.E.2d 493, 494 (Ga. Ct. App.

1962) (quoting Gormley v. Eison, 5 S.E.2d 643 (1939)).

Plaintiffs have not established an independent duty under

Georgia law to pay interest on overpayments.   Consequently,

Georgia's economic loss rule bars recovery in tort.[9]   Brown-

---

[9] The Court is aware that Georgia recognizes an exception to the economic loss
rule for claims of misrepresentation.   See ASC Const. Equip. USA, Inc. v.
City Comm. Real Estate, Inc., 693 S.E.2d 559 (Ga. Ct. App. 2010).   However,
the instant claim is not based on misrepresentation, but rather on negligent
maintenance of patient accounts.   Therefore, the misrepresentation exception
is not applicable here.

AO 72A
(Rev. 8/82)

Arrowhead is entitled to summary judgment on Plaintiffs'
negligence claim.

## II. Stein's Motion for Summary Judgment

Stein moves for summary judgment on the three remaining
claims pending against it - Count One (Professional Negligence),
Count Five (Negligence), and Count Six (Breach of Fiduciary
Duty) - by arguing generally that the Plaintiffs failed to show
that Stein was the proximate cause of any damages and therefore
all claims must fail.  Stein's Mot. Summ. J., Dkt. No. 103.
Stein accurately cites Georgia cases showing that damages
proximately caused by the defendant are a required element for
Plaintiffs' professional negligence and breach of fiduciary duty
theories of liability.  See Oehlerich v. Llewellyn, 647 S.E.2d
399, 401 (Ga. Ct. App. 2007) (professional negligence); Griffin
v. Fowler, 579 S.E.2d 848, 850 (Ga. Ct. App. 2003) (breach of
fiduciary duty).  Likewise, it is beyond question that damages
are a required element of an ordinary negligence claim.  Rasnick
v. Krishna Hospitality, Inc., 713 S.E.2d 835, 837 (Ga. 2011).
Consequently, Stein is correct in their assertion that all three
claims require a showing of damages proximately caused by the
defendant, and that without proof of damages, the claims are
subject to summary judgment.

Stein relies heavily on the Georgia Court of Appeals'
decision in John E. King and Assocs. v. Toler, 675 S.E.2d 492
(Ga. Ct. App. 2009).[10]  Toler and the present case are remarkably
similar.  Like the present dispute, Toler was a putative class
action against Arrowhead Clinics and an allegedly connected law
firm, John E. King and Associates.  The Toler plaintiffs
asserted causes of action against the clinic and the law firm
based on professional negligence, ordinary negligence, breach of
fiduciary duty, and fraud/constructive fraud.  Id.  In Toler,
the plaintiffs pointed to several aspects of the law firm's
conduct: wrongfully soliciting clients, to the point of
harassment; wrongfully requiring plaintiffs to sign a contract
that authorized the law firm to pay the plaintiff's medical
bills; failing to adequately represent the plaintiffs; and,
failing to disclose a fee-sharing arrangement between the law
firm and the clinic.  Id.

In Toler, the trial court granted the plaintiffs' motion
for class certification, and the appellate court reversed.  Id.
The court of appeals rejected certification because "none of the
named plaintiffs was able to articulate any injury received from

---

[10] Stein also relies on the subsequent grant of summary judgment in Toler by
the State Court of Chatham County, Georgia.  See Toler v. Arrowhead Clinic,
Inc., STCV0603261.  The Court need not address the State Court's grant of
summary judgment, given that the State Court merely applied the reasoning of
the court of appeals' decision to the individual named plaintiffs following
rejection of class certification.  Moreover, the conclusions set forth in
the court of appeals' decision are decisive in this matter.

AO 72A
(Rev. 8/82)

either the clinic or law firm."[11]   Id. at 579.  The court of
appeals examined the statements by each named plaintiff and
concluded that not one had set forth a compensable injury.  One
plaintiff claimed that she "did not feel comfortable" signing a
representation contract with a law firm without speaking to a
lawyer contemporaneously and regretted having limited
interaction with her lawyer during the representation.  Id. at
580.  Another stated that she was harmed by having to drive a
long distance to the clinic.  Id.  The third plaintiff stated
that she was harmed because she would have preferred that the
law firm pay her medical bills before providing her with a
settlement check, rather than afterwards.  Id.  The court
concluded that none of these claims gave rise to a compensable
injury.

The Toler plaintiffs argued that they would still be
entitled to nominal damages if they prevailed on their claims,
especially with regards to the breach of fiduciary duty claim.
The court rejected this argument, emphasizing that in order to
recover nominal damages the plaintiffs needed to show "some
injury" to prevail.  Id. at 581 (citing Willet v. Russell M.
Stookey, P.C., 568 S.E.2d 520 (Ga. Ct. App. 2002)).  The court

---

[11] More specifically, the court of appeals rejected certification because
without an articulable injury by the named plaintiffs, "each claim would
have [needed] to be determined on an individual basis," and therefore,
"there [were] no common questions of law or fact which predominate[d] over
any common issues shared by the putative class."  Toler, 675 S.E.2d at 495.

concluded that at the time of class certification, the plaintiffs had "as [of] yet identified no injuries, however small." Id.

As stated previously, three claims remain outstanding against Stein: Count One (Professional Negligence); Count Five (Negligence); Count Six (Breach of Fiduciary Duty). Stein argues, regardless of Plaintiffs' theory, Plaintiffs cannot show that any damages were proximately caused by Stein's conduct. The Court considers each of Plaintiffs remaining counts separately.

### A. Interest on Overpayments

Before addressing whether Plaintiffs have adequately established an injury or harm to support their substantive claims, one point warrants clarification. Plaintiffs, in their response to Stein's motion, argue that Plaintiffs suffered actual damages because "the Waithes have a right to the interest accrued and that the Waithes would have never been paid back their money without incurring legal fees." Dkt. No. 112, at 18. The Plaintiffs refer to the $100 initial payments made by the Waithes to Brown-Arrowhead, and their claims to interest addressed supra. There is simply no evidence that Stein had access to or control over the funds paid by Plaintiffs to Brown-Arrowhead. Accordingly, any claimed harm related to the

AO 72A
(Rev. 8/82)

interest on Plaintiffs' overpayments to Brown-Arrowhead cannot support a cause of action against Stein.

**B. Count One: Professional Negligence**

Plaintiffs claim Stein committed professional negligence by (1) requiring Plaintiffs to sign a contract for representation which authorized Stein to pay all of the client's medical expenses knowing that they were brought into the case by Brown-Arrowhead, and (2) by wrongfully soliciting clients in at the Brown-Arrowhead clinic.  Pls.' Am. Compl. ¶¶ 38, 39, Dkt. No. 6. Stein argues that Plaintiffs cannot show an injury because Plaintiffs cannot show that they would have (1) hired a different lawyer or (2) received a higher settlement if the professional negligence had occurred.  Stein's Mot. Summ. J. 12-13, Dkt. No. 103.  In response to Stein's motion, Plaintiffs go to great lengths to establish that Stein's conduct violated various provisions of the Rules of the State Bar of Georgia. Dkt. No. 112, 20-26.  Plaintiffs, however, do little to show how these violations caused an injury.

"[I]n a suit for legal malpractice, proof that the attorney's negligence proximately caused the client's harm is necessary for recovery.  <u>Oehlerich</u>, 647 S.E.2d at 401 (citing O.C.G.A. § 51-1-8; <u>Dow Chem. Co. v. Ogletree, Deakins, Nash, Smoak & Stewart</u>, 514 S.E.2d 836 (Ga. Ct. App. 1999); and <u>Whitehead v. Cuffie</u>, 364 S.E.2d 87 (Ga. Ct. App. 1987)).

AO 72A
(Rev. 8/82)

"Proximate cause in a malpractice action requires a plaintiff to demonstrate that 'but for the [attorney's] error, the outcome would have been different; any lesser requirement would invite speculation and conjecture.'" Szorvy v. Olderman, 530 S.E.2d 783, 786 (Ga. Ct. App. 2000) (quoting Houston v. Surrett, 474 S.E.2d 39 (Ga. Ct. App. 1996)).  Indeed, plaintiffs generally must show that a more favorable outcome would have occurred, if not for the attorney's negligence, in order to sufficiently show that an injury occurred.  See, e.g., Szurovy, 530 S.E.2d at 786; McMann v. Mockler, 503 S.E.2d 894 (Ga. Ct. App. 1998); Dedon v. Orr, 508 S.E.2d 445 (Ga. Ct. App. 1998).

Plaintiffs' are clearly unable to show injury related to their first theory of professional negligence – that Stein was professionally negligent in requiring Plaintiffs to sign a contract that allowed Stein to pay all of Plaintiffs' medical expenses.  There is no indication in the record that Stein ever paid any of Plaintiffs' medical expenses.  Rather, it appears that Plaintiffs' insurers paid all of the medical expenses.[12] The proceeds of the settlement negotiated by Stein went directly to the Plaintiffs after Stein collected its fees.  Consequently, there is no evidence of damages related to the contract for payment of medical fees.

---

[12] As noted, Plaintiffs paid $100 worth of expenses, but that portion was later refunded.

Plaintiffs' second theory of liability, based on unethical solicitation of clients, is equally unavailing.  Plaintiffs did not state that they would have selected another attorney in their case if Stein had not approached them at the Brown-Arrowhead clinic.  Moreover, Plaintiffs have made no effort to show that they could have achieved a more favorable settlement, but for the unethical solicitation.  Without some showing of injury, however small, Plaintiffs' claim for professional negligence fails.

Notably, both theories of professional negligence were alleged and rejected in the Toler case.  Toler, 675 S.E.2d at 494 ("The claims brought by the complaint were for professional negligence against King for wrongfully soliciting clients within the confines of a medical office, and for wrongfully requiring the client to sign a contract authorizing the King firm to pay all the medical expenses of the Brown clinics.").  Plaintiffs in the present suit have failed to show how they suffered any sort of harm or injury that is different from the plaintiffs in Toler.  The plaintiffs in Toler were exposed to nearly the exact same conduct by a law firm that the Waithes experienced.  Without distinguishing the harm suffered by the Waithes from the harms (or lack thereof) suffered by the Toler plaintiffs, Plaintiffs' claim for professional negligence fails.  Stein is

AO 72A
(Rev. 8/82)

entitled to summary judgment on Plaintiffs' professional negligence claim.

### C. Count Five: Negligence

Count Five alleges Stein was negligent in failing to "insure that [Plaintiffs] were adequately represented and [that Stein] had a duty not to solicit, harass and invade the privacy of [Plaintiffs]."  Pls.' Am. Compl. ¶ 56, Dkt. No. 6.  Here, the Court need go no further than <u>Toler</u>.  The same exact allegations were made against the King firm in <u>Toler</u>.  <u>Toler</u>, 675 S.E.2d at 494 ("The claims brought by the complaint were for . . . negligence . . . in that . . . the King firm had a duty to ensure that their clients were adequately represented and also had a duty not to solicit or harass potential clients . . . .").  In <u>Toler</u>, the court was faced with essentially identical circumstances related to the adequacy of representation and client solicitation, and the court found no compensable injury.  <u>Id.</u>  Here, Plaintiffs have failed to show that they suffered any harm or injury that is distinct from the plaintiffs in <u>Toler</u>.  Without identifying an injury suffered by the Waithes above and beyond those suffered by the <u>Toler</u> plaintiffs, Plaintiffs' claim for negligence fails.  Because Plaintiffs are unable to

establish a compensable injury, Stein is entitled to summary judgment on Count Five.[13]

### D. Count Six: Breach of Fiduciary Duty

Plaintiffs' Count Six claims that Stein breached its fiduciary duty to Plaintiffs by "receiving private information concerning a potential client, without authorization and using it to their economic advantage." Pls.' Am. Compl. ¶ 64, Dkt. No. 6. Again, Stein argues that Plaintiffs are unable to show any damages proximately caused by Stein's conduct. Stein's Mot. Summ. J. 11, Dkt. No. 103.

"It is well settled that a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." Nash v. Studdard, 670 S.E.2d 508, 514 (Ga. Ct. App. 2008) (internal citations omitted). Without a showing of damages proximately caused by the breach, a claim may not be maintained. See, e.g., Willett v. Stookey, 568 S.E.2d 520 (Ga. Ct. App. 2002), Conner v. Hart, 555 S.E.2d 783 (Ga. Ct. App. 2001).

---

[13] The Court also notes that alternative claims which are mere duplications of a plaintiff's professional negligence claim are typically subject to summary judgment in the defendant's favor. See Griffin, 579 S.E.2d at 850 (holding that plaintiff's breach of fiduciary duty claim was a "mere duplication" of plaintiff's legal malpractice claim and could not be maintained). Here, Plaintiffs' claims of negligence against Stein attacks the adequacy of representation and the manner in which Stein solicited clients; Plaintiffs' professional negligence claims in Count One is essentially the same. However, because the Court grants summary judgment to Stein for other reasons, the Court need not address whether Plaintiffs' claims are duplicative.

Plaintiffs have simply failed to identify any actual injury related to the receipt of private information.[14]  At best, Plaintiffs can assert that they became clients of Stein because of the alleged release of patient intake forms.  However, becoming a Stein client is not an injury in and of itself, no matter how strenuously Plaintiffs claim it to be.

Plaintiffs also argue that, if nothing else, they are entitled to "nominal damages" for breach of fiduciary duty, and cite multiple cases in support.  Dkt. No. 112, at 19.  In support of their position, Plaintiffs first refer to Tante v. Herring, 453 S.E.2d 686 (Ga. 1994).  However, Tante did not address nominal damages.  Tante held that an attorney's conduct[15] that had no adverse impact on representation could not support a claim for legal malpractice, but it could support a claim of breach of fiduciary duty.  Id. at 687.  Plaintiffs also cite Holmes v. Drucker, 411 S.E.2d 728 (Ga. Ct. App. 1991), which states as a general principle that where there is a breach of a legal duty accompanied by damage, even nominal damage, the law gives a right to recover.  This case does not, however, state

---

[14] The Court also notes that it has already recognized that Plaintiffs have made an insufficient factual showing that there was any release of Plaintiffs' private medical information.  Gibbs' testimony is generalized, and lacking in personal knowledge about how the Plaintiffs came to be clients of Stein.

[15] In Tante, the defendant attorney was accused of taking advantage of knowledge that plaintiff was emotionally and mentally impaired in order to convince the plaintiff have an affair with him.  The conduct in the instant case does not begin to approach the reprehensibility of the Tante defendant's conduct.

that nominal damages can be awarded where plaintiffs are unable to state any injury or harm.  To the contrary, Drucker states that "[d]amages, even only nominal damages are given as compensation for *injury* done."  Id. at 730 (emphasis added).  Plaintiffs' cited cases do not help identify a compensable injury in this case.[16]  If anything, Plaintiffs' authority supports Stein's argument that Plaintiff must show an injury, even to claim nominal damages, in order to survive summary judgment.  Plaintiffs have failed to do so, and therefore Stein is entitled to summary judgment on Plaintiffs' breach of fiduciary duty claim.

### E. Other Damages

Plaintiffs interject various other theories of injury throughout their briefs.  For example, Plaintiffs claim that they suffered an injury because they "lost any true control over their personal injury claims," Dkt. No. 112, at 18, and because Stein failed to "disclose its relationship with Brown-Arrowhead,"[17] Dkt. No. 112, at 12.  Plaintiffs fail to explain

---

[16] Plaintiffs' cite another case, Peters v. Hyatt Legal Servs., 440 S.E.2d 222 (Ga. Ct. App. 1993), which is also inapposite.  There, the court held that change to a plaintiff's marital status, without the plaintiff's knowledge and without full consent, is "sufficient to state a cause of action for at least nominal damages."  Id. at 225.  Here, however, there is no claim that the Plaintiffs suffered any such "legal-status" injury.

[17] Plaintiff Linda Waithe acknowledged that she actually knew that there was a relationship between Stein and Brown-Arrowhead on the date of her first consultation, based on the fact that the Brown-Arrowhead doctor recommended Stein.  L. Waithe Dep. 65:21, Dkt. No. 101, Ex. C.  Consequently, to the extent that Plaintiffs base their claims against Stein on Stein's failure to

how these circumstances caused them harm.  Even in a light most favorable to the Plaintiffs, the Plaintiffs have failed to do more than hint at the shadow of injury.  Wraithlike damages, however, are not sufficient to carry the Plaintiffs' claims beyond summary judgment.

## IV. Punitive Damages and Attorneys' Fees

Plaintiffs asserted claims for attorneys' fees and punitive damages in separate counts of their Complaint. Pls.' Am. Compl. ¶¶ 66, 68, Dkt. No. 6.  Punitive damages may only be awarded in tort actions in which there is a valid claim for actual damages. Nash v. Studdard, 670 S.E.2d 508, 515 (Ga. Ct. App. 2008) (citing Nelson & Hill, 537 S.E.2d 670 (Ga. Ct. App. 2000)); Rhone v. Bolden, 608 S.E.2d 22 (2004).  Likewise, once all underlying claims are eliminated, a claim for attorneys' fees may not be maintained.  Duffy v. The Landings Ass'n, Inc., 563 S.E.2d 174 (Ga. Ct. App. 2002).  Because all of Plaintiffs' substantive claims have been adjudicated in favor of the Defendants, Defendants are also entitled to summary judgment on Plaintiffs' claims for attorneys' fees and punitive damages.

---

disclose the connection with Brown-Arrowhead, Plaintiffs have failed to demonstrate that disclosure would have made any difference.

AO 72A
(Rev. 8/82)

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Summary Judgment is **DENIED**, Brown-Arrowhead's Motion for Summary Judgment is **GRANTED**, and Stein's Motion for Summary Judgment is **GRANTED**. The Clerk is directed to close the case and **ENTER FINAL JUDGMENT** in favor of Defendants on all claims.

**SO ORDERED**, this 7th day of March, 2012.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA